Good morning, Your Honor. If it may please the Court, my name is Nicholas Palavida. I represent the Appellant Executive Benefits Design Group. I would like to have eight minutes for my initial conversation and two minutes for rebuttal. This case comes, and of course we have ten minutes, this case comes on appeal from the Bankruptcy Court that, upon filing a motion for a summary judgment on a fraudulent conveyance issue, ruled against my client, Executive Benefits Design Group, and was affirmed on appeal and is now before this Court. The reason why this judgment should be vacated is based on three words, Stern versus Marshall. It is fairly clear from the recent Supreme Court of the United States case, which is a 5-4 decision, that the Bankruptcy Court does not have jurisdiction to listen to fraudulent conveyance issues, which they did in this case. And part of the reason why, when you read through the decision, of course, this Court... Stern didn't deal with fraudulent conveyance. Grand Financiera dealt with that. Pardon? Stern did not deal with fraudulent conveyance claim. Right? Stern versus Marshall did deal with fraudulent conveyance claims. What was the ruling? The ruling was that... It was a fraudulent conveyance claim? It didn't have to do with Marshall's state law claim for interference with a gift? Yes, and the thing is... They didn't talk about fraudulent conveyance. It was not a fraudulent conveyance case. Yes, it was not a fraudulent conveyance case, but they did discuss fraudulent conveyance issues, and they said that the... But just listen to the question. Sure. And answer the question. Stern versus Marshall was not a fraudulent conveyance case. Right. Grand Financiera was a fraudulent conveyance case. Grand Financiera was a fraudulent conveyance case. That is correct. Grand Financiera happened in 1988, which by my count is 23 years ago. Right. Okay. We've operated for 23 years. I mean, I didn't see anything in Stern versus Marshall that changed anything in Grand Financiera. Right. So we've got 23 years worth of law that seems to contradict your position here. I think 23 years that would actually support the position here because Grand Financiera was based on a case where the person that was being sued for fraudulent conveyance... You know what Grand Financiera said. Yeah, they never filed a claim in the bankruptcy court. We never did either. But bankruptcy courts and this court, we have been applying fraud, allowing bankruptcy courts to adjudicate fraudulent conveyance claims for 23 years, right? Well, according to what I've read in Stern, and I can go back and reread it, basically the Stern versus Marshall case did not, took away the ability for the bankruptcy court to hear fraudulent conveyance issues. And it's also outlined in my motion to this court. So the thing is... Why didn't you raise it in your brief? The reason why is because when we went on brief, this decision was not made. You signed it in your brief. By the time the reply brief came out, it was decided. You didn't say anything about that in your reply brief. I did put Stern versus Marshall in the reply brief. I did not put it in the original brief because it was not out. It came out later. I got that part, but you didn't make an argument the first chance you had in the reply brief, right? No, I didn't. But this case should be reversed for other reasons. Okay. In other words, Stern versus Marshall is one good reason to reverse this summary judgment. What are the other reasons? The other reason is it is a summary judgment. There's supposed to be no disputable issues to law and fact and have the light most favorable to the non-moving party. There is justiciable issue as to law and fact, especially where on page 135 of the appellee's excerpts of record, page 68 of our record, their own expert witness testifies that the fraudulent conveyance was to Eris. The successor corporation is Eris. They did not say it was executive benefits. So all of a sudden, we do have a major dispute as to fact. Now, I say the same thing. I agree with their expert witness. It is not to executive benefits. We have two people. And I have a third person, but because of the way the bankruptcy court moves, our own CPA, unfortunately, was unable to testify at that point in time, which is part of the reason why I agree with Stern versus Marshall, the lack of constitutional protections that we have here. In other words, we did not get our case heard, and when we did present facts that were clearly in our favor, clearly by their own expert witness saying we are not the successor trustee, we did not accept the fraudulent conveyance, it was totally ignored. What do you make of this spreadsheet that we have? We have their expert report and then their transaction account. This is at ER 47. Yeah, ER 47 from London. I mean, it seems to suggest, and what the expert says, is that this was a joint account by Eris and BIA. Yeah. BIA is not executive benefits. It's Bellingham. It's Eris and Bellingham. It has nothing to do with my company. That's one reason I'm saying the facts are bloody wrong. Okay? And if you look at the expert witness testimony on, I don't know, which expert record you have, mine or hers. It's not EBIA? No. It's BIA, Bellingham Insurance Agency. I'm looking at the spreadsheet and it says EBIA. Yeah, but if you look at the conclusion of the expert witness it's either on page 168 of the appellee's brief or 68 on the appellant brief or 135 on the appellee's brief. Okay? It says specifically the transfers were to Eris and Eris' successor corporation. So you have all of our pages in the brief? Yes. On the appellee's brief it's page 135. On the appellant's brief it's page 68. Excuse me, not brief, on the expert record, page 135. You keep saying brief. I'm sorry. Sorry, guys. It's 135. Why don't you grab it? Let's take a look at it. So it's excerpts of record. This is excerpts of record, finally approached the bench, page 135. That's okay. Approached the bench. Just tell me where it is. Stay at the lecture. It's page 135 from the appellee's brief. Not brief, excerpts of record. Excuse me, appellee's excerpt of record. Well, there's excerpts of record and then there's appellee's excerpt of record. Yeah, it's appellee's excerpt of record, page 135. 135, okay. Let's look at that. Okay, I'm looking at it. Okay, yeah. 31 says my review of the records indicates with a few months of the petition date, Bellingham insurance transferred to Eris, all other parts of the assets, including funds, accounts receivables, ongoing business, book of business, work in progress, et cetera. My conclusion after reviewing the records is Eris is nothing more than a continuation of BIA's business and is a successor to BIA. That is what their own expert witness says. And I agree, we are not, executive benefits is not the successor, and we are not, did not receive these transfers. However, the bankruptcy court rules against us. And so all of a sudden I have a judgment against my company that didn't file a proof of claim, had nothing to do with the Eris BIA involvement, and we're walking around with a judgment that took place just like that without really having a factual review and with no one looking at what the expert said. Or at least if they did look at it, they ignored it, which is, by the way. You've got a minute and a half left. If you want to save any of it, now's the time to stop talking. Okay. Well, I would just say that it would create a new standard as to summary judgment if this is upheld. Okay. Your Honor, it's Denise Mavis representing the trustee. In answer to your first question that you asked to the appellant regarding Grand Financier, actually there has been some, I believe that you're absolutely dead on correct, that Grand Financier did say that fraud transfers are a matter to be heard by the bankruptcy court, and it is a discussion similar to the Stern case where they're discussing the public rights exception. And there's a fairly detailed discussion right on point in a case that recently came out called Henry Safety Harbor Resorts out of the bankruptcy court in Tampa where they do a fairly in-depth analysis of the Stern case and go through that same Grand Financier analysis. Did you cite it in your opposition? No, it just came out recently. It's the site to it is. What does recently mean? What? What does recently mean? This morning? No, August 30th, 2011. By the time I did my... Months ago? And you didn't see fit to send in a 28-J letter so we could look at the case before, if you think it's that important? I apologize. Supplemental authority, are you familiar with that practice? I'm sorry, I didn't know about the existence of the case until just the last couple weeks. I found out that... I obviously made a mistake. So spring you're here today? I apologize for that. How come you didn't feel to talk to me about the case if you just raised it here for the first time? Well, I'm merely pointing out to you that there's been some additional discussion about it. You clearly know what Grand Financier says. You're the one who... You're relying on a case that you say is a very thorough analysis. You knew about it two weeks ago. It came out months ago, right? Yes. And you decided to pop it out here the first time at all. It's a very bad practice, a really poor practice on your part. I apologize. Did you bring it to the attention of opposing counsel? No, I didn't, Your Honor. You just saw you spring it here? No. I apologize for that. I understand that that's poor practice. I understand. How things are done. I understand, Your Honor. So you can go on, but it's not really being helpful to your client. In relation to the defendant's argument... Well, when you think of the fact that the Supreme Court comes down with its opinion recently that seems to say, quite in no uncertain terms, we said it in Grand Financier, when we really mean it, if it's a common law claim, then you need an Article III judge to adjudicate it, not an Article III court and probably a jury to adjudicate the claim. And bankruptcy courts can't do juries, and they don't have protections for Article III. What do you say to that? What do I tell Chief Justice Roberts next time I see him? I say, oh, well, we read your case, and we just didn't think it was very important? Well, I believe that the court was very clear that it is a very narrow holding to specifically... I don't think they were at all clear that it was a narrow holding. In fact, it seems to me to be a very broad holding, and they were saying, they were speaking very broadly, and they made no bones about it. Where do they say it's narrow? What do you read? Well, I quoted it in my response to... Well, do it again. Okay. Now you've got six minutes and 12 seconds left, so why don't you make your case? What is it about this case that is not clear? I mean, what reason is there for us not to hold today that bankruptcy courts cannot adjudicate fraudulent conveyance claims under the authority of Graeme Financiera as amplified by Stern v. Marshall? If you don't have anything, maybe you can go on to discuss the merits of the case. Well, I do have something. I'm trying to find the exact quote, Your Honor, but I don't even think you have to get to the Stern v. Marshall case because Stern v. Marshall clearly says that court proceedings still are to be heard by the bankruptcy court, and Judge Peckman, in her ruling, specifically found an appeal to Section 548 fraud transfer claim that the trustee brought. 548 is... Judge Peckman did not have the benefit of Stern v. Marshall when she ruled, right? Right, but Marshall still says court proceedings are to be heard by the bankruptcy court. It doesn't say that the district court now is supposed to hear all of the bankruptcy court matters. What Stern v. Marshall says is state court matters that fall within these various parameters, including the public trust doctrine is one of the issues, have to be heard by the state court. So Judge Peckman affirmed the judge's summary judgment motion on three counts, one of which is a Section 548A2 claim, which, pursuant to 157, is a court proceeding in the bankruptcy court. So I don't even think you need... What Stern says quite clearly is the fact that you call it, or Congress defines it as a court proceeding, in the bankruptcy court, in the Bankruptcy Act, doesn't mean a thing if it is a common law action. So, you know, the thing in the claim in Stern v. Marshall was also a court proceeding, and the Supreme Court said, yes, this falls within the definition of what the bankruptcy court has authority under the bankruptcy court to adjudicate it, but as an Article III matter of judicial power, it cannot do so. Now, let me make sure I understand straight what happened in this case. This is a case where there was a bankruptcy claim, and the trustee, your client, goes out and finds somebody in the real world, not somebody who's now already before the bankruptcy court, and says, you are a fraudulent transferee, right? And I'm going to raise a state law, there's also federal law, fraudulent conveyance claim, but let's just focus right now on the state. I'm going to bring a state law fraudulent conveyance action against you to recover money that was fraudulent conveyed in violation of state law, right? Yes. And I'm going to not do this before a state judge, and not have it adjudicated by a federal Article III judge, but I want this matter adjudicated by a bankruptcy judge. Why is this exactly what Stern said you can no longer do? It's over. Because it's a court proceeding, and Stern says you can hear court proceedings, and I believe the ruling in the Stern case is a very narrow ruling dealing with the issues of that case. And I do want to clarify something. If it's not Stern and Marshall, then it's different? I'm sorry? If it's not Stern and Marshall, then it's different? I mean, what's different about Stern and Marshall? Stern v. Marshall is a case involving a proof of claim. It was an objection to a proof of claim, and in response to the proof of claim, the party asserted a counterclaim that related to state court issues. And as I read Stern v. Marshall, while the bankruptcy court had jurisdiction over the proof of claim issue, it didn't have jurisdiction to litigate a solely state court issue. It was only tangentially related to that proof of claim. Okay. We have about two minutes left. What do you want to say about the underlying claim? What I want to say about the underlying claim is the appellate — This is really not the stuff for summary judgment, is it? Well, of course it's for summary judgment. The attached to the motion for summary judgment is five depositions of the appellant's employees, who used to be employees of the debtor. And all of them testified, well, one day we went in, it was this business. One day we went in, it was this business. They're the records that the debtor produced to the accountant, and those records show that these transfers were being made. And it's Excerpt 47 to the record where those transfers are. I looked at 47. I didn't make heads or tails of it. I couldn't tell what it was. Why don't you explain it to me? Do you have it there? Well, as I understand Excerpt — Do you have it there? Yes, I do have it here. Okay, so let's look at it together, and you point out to me how this proves your case. I mean, that's the key piece of evidence here. Right. And what I contend Excerpt 47 shows and what my accountant testified to is that Mr. Pierce was depositing money, his commission money, into the account. How do we know it was commission money? How do we know it wasn't some other money? Because it was testified to by him at the deposition. It was — Mr. Pierce had an irrevocable assignment. Assignment. Didn't he get an assignment? He did. And when the debtor filed for bankruptcy, he invoked that so that the money went directly to him. So the money went to him, and then he turned around and deposited into the new account, the BIA account. And he says that, that he turned around and deposited that money? He acknowledges that in his deposition, yes. And I don't believe it's really — Okay, and how do we know this account, this transactions spreadsheet, that this is an executive benefits account? Because it says right at the top, Intercompany EBIA, and EBIA is the moniker for Executive Benefits Insurance Agency. What does Intercompany EBIA mean? This is how they maintain their records because they transferred money. I see what it means. I'm sorry? What does it mean? I mean, it says Aris Inc. is the top. Aris and EBIA had accounts, and they shared the deposits in those accounts, and this is the intercompany record of how they keep track of what monies are coming in and who they're being credited to or deposited to, who they're for the benefit of or for the detriment of, is what this document says. And in response to the motion for summary judgment, what the appellant said was, hmm, must be wrong. That's their whole explanation. I have six depositions attached to the motion for summary judgment. I have substantial declarations from my accountant. And in response to that, what we received is one declaration from Mr. Pallavito, with no exhibits attached to it, just saying clearly you've read this evidence wrong. And as Judge Peckman noted in her opinion, this conjecture does not controvert the accounting records that show the transactions moved, BIA's accounts receivable to EBIA at the expense of BIA's creditors. Thank you. Thank you. You've got a minute and a half left, or a minute and 25 seconds. Attorney General Marshall, also there's another case, because all of the Fairmont complaints was in dicta in the case. It's Langenkamp says, if in contrast the creditor has not filed a proof of claim, the trustee's preference action does not become part of the claims allowance process subject resolution by the bankruptcy court. We never filed a claim. Then it goes on further, Stern v. Marshall, the bankruptcy court below lacked the constitutional authority to enter final judgment on state law counterclaim that is not resolved in process of ruling on a creditor's proof of claim, which is one reason this case should be reversed. Thank you, Your Honor. Okay. Thank you. Case is argued. Thanks a million. We are adjourned. All rise. This court for this session stands adjourned.
judges: Collins, Kozinski, Paez